HEARD, Judge Pro Tem.
The defendant, John Allen Frith, and two others, John Wayne Costin and Robert Eugene McCuin, Jr., were indicted by a Oua-chita Parish Grand Jury for first degree murder. LSA-R.S. 14:30. An amended indictment charging Frith with second degree murder, LSA-R.S. 14:30.1, was subsequently filed, to which Frith pled not guilty. After a jury trial Frith was found guilty as charged by unanimous verdict. He was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. On appeal Frith makes two assignments of error:
(1) There was insufficient evidence to establish the defendant’s guilt beyond a reasonable doubt.
(2) The trial court erred in failing to declare a mistrial or take other curative measures following a co-defendant’s withdrawal from his plea agreement when defendant’s trial strategy and opening statement was based on the co-defendant’s availability as a witness.
We find that both assignments are without merit, and accordingly affirm the conviction and sentence.
Costin, originally a co-defendant, pled guilty to one count of armed robbery and conspiracy to commit first degree murder. He served as the prosecution’s principal witness at Frith’s trial. McCuin had been scheduled to appear as a witness in the trial, but he withdrew from his plea bargain during the trial.
On the evening of October 25, 1984, Cos-tin saw Jack Baswell at a:convenience store in West Monroe, and observed that he appeared to be carrying a large sum of money. Baswell, aged nineteen, was an itinerant salesman who sold leather goods, car stereo equipment and other items from his car. Costin testified that he went to Frith’s house, where he and Frith made *476 plans to take the victim’s goods and money. They then proceeded to McCuin’s residence to enlist his help. Frith brought a 30.06 rifle with him from his home, and Costin already had a .22 caliber rifle in his truck. After being joined by McCuin, the three went to Costin’s trailer and made plans for McCuin to lure Baswell to an isolated area on Toney Bayou Road. The three would then “hem in” the victim with their vehicles and rob him.
McCuin was armed with Costin’s .22 rifle when he went to the convenience store. Frith, in the back of Costin’s truck, had his 30.06 rifle. Costin had a shotgun in the seat next to him. After McCuin’s and Bas-well’s vehicles passed by on the road, Cos-tin followed them. Costin testified that as they passed Baswell’s car he heard three shots fired by Frith and then saw the car swerve off the road. McCuin fired two shots with the .22 caliber rifle as Costin was turning the truck around. Costin said that he fired his shotgun into the car door in response to Frith’s cries of “Shoot him! Shoot him!”, and McCuin then shot the victim with a shotgun. Frith took McCuin’s truck and left the scene while McCuin took $60 from the victim’s pockets and Costin ransacked the victim’s car for the leather bags, speakers and car stereos. The three met at Costin’s house where they hid the stolen items under Costin’s boat. Each of the partners received $20 for their efforts. McCuin later returned to the site, unsuccessfully searching for more money.
Baswell’s body was discovered the following morning by Shelby Lenard. Investigation of the area revealed distinctive tire markings in the road, which were found to match Costin’s truck when he was arrested on an unrelated charge. No prints were found because all three had used gloves. The evidence brought out at trial from the expert witnesses and investigating officers substantially corroborated Costin’s story.
ASSIGNMENT OF ERROR NO. 1
In this assignment of error, Frith contends that the evidence adduced was insufficient to establish defendant’s guilt beyond a reasonable doubt as to each essential element of the crime charged.
The Louisiana Supreme Court recently defined the scope of appellate review regarding the sufficiency of evidence to sustain a conviction. The conviction must be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Garcia, 483 So.2d 953 (La.1986).
Defendant was charged with a violation of LSA-R.S. 14:3o.!.[1]
On appeal, defendant contends that Costin’s testimony could not be believed by any rational trier of fact because of several discrepancies between Costin’s testimony and the physical evidence. In brief, Frith admits that a conviction can be sustained on the uncorroborated testimony of a purported accomplice. However, he contends that such testimony should be treated with great caution. Defendant relies upon State v. May, 339 So.2d 764 (La.1976) and State v. Murray, 375 So.2d 80 (La.1979) for the proposition that although a conviction can be sustained on the uncorroborated testimony of a purported accomplice, the jury should be instructed to treat such testimony with great caution. Defendant argues that because of the inconsistencies between Costin’s testimony and the physical evidence, his testimony is suspect and insufficient to carry the burden of proof.
*477 The same argument was examined and rejected by a panel of this court in State v. Wilkerson, 448 So.2d 1355 (La.App.2d Cir. 1984). It is not the function of the appellate court to evaluate the credibility of the witnesses and overturn the trier of fact on its factual determination of guilt. The jury resolved the inconsistency against Frith. Conflicting testimony goes not to the sufficiency but to the weight of the evidence. State in the Interest of Cox, 461 So.2d 658 (La.App. 1st Cir.1984), writ denied 464 So.2d 1375 (La.1985). This court is constitutionally prohibited from addressing a question of fact such as witness credibility. LSA-Const. Art. 5 § 10(B). Thus, this portion of Frith’s argument is without merit.
Frith also argues that the trial court should have instructed the jury that they could convict on the uncorroborated testimony of an accomplice but should do so with great caution. The same situation was presented in State v. Dunn, 454 So.2d 1229 (La.App. 2d Cir.1984). In Dunn, as here, no special jury instruction was requested by the appellant, and no objection was raised to the charge given. LSA-C. Cr.P. art. 801 requires that a party assigning as error the failure to give a jury charge must object before the jury retires. Since appellant failed to request a special charge or object to the charge given, this argument cannot be urged on appeal. Dunn, supra.
The evidence is sufficient to sustain Frith’s conviction. The state presented the testimony of several members of the Oua-chita Parish Sheriff’s Office who identified numerous items of physical evidence recovered at the crime scene, and also items taken from Baswell’s vehicle that were found at Costin’s trailer. Although there were some discrepancies between the testimony of Costin and the physical evidence, those inconsistencies were minor and do not cast substantial doubt on the veracity of Costin’s testimony. Shell casings were found in the area where Frith allegedly fired shots from the rear of the pickup truck which Costin was driving. The deputies observed tire tracks which corresponded to the markings of the pickup truck driven by Costin. The bullet entry site in the rear hatch window was consistent with Costin’s testimony that Frith fired at the vehicle from the rear, thus supporting the inference that the rifle shot entered the rear window of the vehicle and struck Bas-well. Furthermore, the pattern of gunshots on the driver’s door corroborates Cos-tin’s testimony that he fired the shotgun into the car door. The numerous pellet wounds sustained by the victim are consistent with Costin’s testimony that McCuin fired upon the victim after the vehicle had come to rest. Accordingly, we conclude that Costin’s testimony was corroborated by the physical evidence and thus carries a substantial degree of reliability.
Moreover, Costin’s testimony reflected that the three assailants conspired to commit the robbery. Costin admitted that he and Frith formulated plans to “separate” the victim from his goods and money prior to the enlistment of McCuin and that they obtained lethal weapons to further their goal. Pursuant to plan, the victim was lured into a desolate, rural area of West Monroe where he was brutally murdered, his automobile ransacked, and his personal effects removed from his body. Frith, McCuin and Costin hid the proceeds of the murder and divided the stolen money equally among themselves.
As this court stated in Wilkerson, supra, the evidence is sufficient to support a conviction when any rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, could have concluded that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Applying this sufficiency evaluation to the evidence in the instant case, we conclude that any rational trier of fact could have found the essential elements of the crime of second degree murder proved beyond a reasonable doubt. Even assuming that defendant Frith did not fire any of the fatal shots, his actions before, during and after the commission of the offense would *478 justify a rational trier of fact’s conclusion that he was a principal to the offense and was equally as culpable as the others. LSA-R.S. 14:24.
We find this assignment of error to be without merit.
ASSIGNMENT OP ERROR NO. 2
In his second assignment of error defendant contends that his reliance upon the state’s amended discovery response caused him to adopt an ill-advised trial strategy that prejudiced his defense. Frith argues that he relied upon the state’s pretrial disclosure that McCuin would testify against him in preparation of trial, and was lulled into believing that the state’s case was much stronger than it turned out to be. Counsel for Frith argues that because he expected to be confronted by two accusers (instead of one), he was forced to admit Frith’s presence at the scene of the offense in opening argument and choose a strategy of “minimal involvement.” Counsel alleges that he would not have chosen this strategy had he known that only one of Frith’s accomplices would testify against him at trial. Frith argues that the trial court should have declared a mistrial or taken other curative measures.
The record discloses that Frith, Costin and McCuin were jointly indicted for the offense of first degree murder. In the state’s initial discovery response, it notified Frith that the state had not entered into any plea bargain with either co-defendant and would notify Frith if such came to pass. The state proceeded to trial against Frith on Monday, December 9th. On that date, the state filed an amended indictment charging Frith with second degree murder. Also on that date the state notified defendant that it expected to call either McCuin and/or Costin as witnesses and that the prosecution had entered into plea agreements with those witnesses. A similar notice was filed on December 10th. Jury selection continued through Tuesday, December 10th. On Wednesday morning, December 11th, McCuin withdrew his former plea of guilty to second degree murder. The jury then heard the evidence against the defendant.
This assignment of error is without merit for numerous reasons. First, curative measures were taken. The record discloses that the trial court informed the jury, prior to the taking of testimony, that one of the defendants withdrew from the plea bargains referred to during voir dire and opening statements.
Second, as the state correctly contends on appeal, counsel for defendant failed to seek either a continuance or a recess. If counsel’s preparation or strategy had been substantially prejudiced, he should have requested a continuance or recess. LSA-C. Cr.P. arts. 708 and 712. He failed to do so.
Third, the record demonstrates that no objection was raised during the proceedings. LSA-C.Cr.P. art. 841 states that “... any regularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence ... ”; State v. Green, 390 So.2d 1253 (La.1980); State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ denied 456 So.2d 171 (La.1984). This too precludes appellate review of the assigned error.
Fourth, defendant failed to request a mistrial on the basis of “... prejudicial conduct in or outside the courtroom making it impossible for the defendant to obtain a fair trial ...” LSA-C.Cr.P. art. 775; State v. Bolton, 408 So.2d 250 (La.1981). Thus, he waived any error he could have claimed.
Finally, the record fails to disclose evidence of bad faith by the prosecution or that it “induced” McCuin to withdraw his previously entered guilty plea. The record discloses that the prosecution was surprised by McCuin’s action. In fact, the state informed McCuin that by withdrawing his guilty plea he once again exposed himself to capital murder charges. The state diligently complied with its duties under LSA-C.Cr.P. art. 721 (notice of intention to use hearsay statements of co-conspirators), LSA-C.Cr.P. art. 729.3 (continuing duty to disclose), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 *479 L.Ed.2d 104 (1972) (disclosure of impeachment evidence of witnesses).
The purpose of the discovery rules, LSA-C.Cr.P. art. 716 et seq., is to eliminate unwarranted prejudice which could arise from surprise evidence. State v. White, 430 So.2d 171 (La.App. 2d Cir.1983), writ denied 433 So.2d 1055 (La.1988). There is no indication in the record that the state did anything other than promptly comply with the discovery rules, nor that they had any control over the decision of McCuin to withdraw from his plea agreement. Defendant’s argument lacks a factual basis.
For these reasons, we find that the assignments of error present no merit. Frith’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. § 30.1. Second degree murder
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.